# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| LARRY D. SMITH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 3:06-CV-123-TS |
| | ) | |
| EDDIE BUSS, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Larry D. Smith is an Indiana prisoner serving an aggregate 90-year sentence for his 1998 convictions on two counts of class A felony child molesting, one count of class C felony child molesting, and one count of class C felony sexual misconduct with a minor. He has filed this Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 challenging his conviction and sentence. The Respondent argues that the Petition should be denied because Smith's claims are either not cognizable in this proceeding, are procedurally defaulted, or fail on the merits. For the reasons stated below, the Petition is denied.

## FACTS

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Smith's burden to rebut this presumption of correctness with clear and convincing evidence. *Id.* The Indiana Court of Appeals set forth the facts regarding Smith's convictions as follows:

> On August 27, 1997, the State charged Smith with sexual misconduct with a minor, a class C felony, alleging that Smith touched or fondled R.J Subsequently, the State added charges. Specifically, the State asserted that during a two-year period, Smith had also committed six counts of child molesting and one count of sexual misconduct with a minor as to two additional child victims.

Three of these counts alleged sexual deviate conduct, as class A felony offenses. Three counts alleged fondling or touching, as class C felony offenses, and a fourth alleged sexual misconduct with a minor, as a class C felony. Hence, Smith faced three class A felony charges and five class C felony charges.

On June 22, 1998, Smith appeared before the trial court and proffered a signed "Waiver of Rights, Withdrawal of Not Guilty Plea and Plea of Guilty." This document described the possible sentencing range for A and C felonies. It affirmed that Smith had read the possible penalties and discussed them with his attorney, and that he understood that any prior conviction he had might cause the imposition of consecutive sentences. The trial court then reviewed this document with Smith. Smith confirmed to the trial court that he intended to plead guilty to two counts of child molesting, as class A felonies; one count of child molesting, as a class C felony; and one count of sexual misconduct with a minor, as a class C felony.

The signed document stated that Smith wanted to withdraw the pleas of not guilty to all eight felony charges, that by entering his plea of guilty to charges against him he was admitting the truth of all facts alleged or stated in the indictment or information, and that the charge which he was pleading to were the eight felonies charged.

The trial court explained to Smith that the maximum sentence for a class A felony was fifty years; the maximum sentence for a class C felony was eight years; and that with consecutive sentences "the maximum sentence that you could receive on all of these would be one hundred and sixteen years." The trial court informed Smith that in sentencing him, it would "consider any prior criminal record," which "would include misdemeanors and delinquency charges as a child."

Smith then admitted the factual basis for the two class A felony child molesting offenses, the class C felony child molesting offense, and the class C felony sexual misconduct with a minor offense. Thereafter, Smith's counsel moved the trial court to allow Smith to plead guilty to the two class A and two class C offenses. Smith affirmed to the trial court that he had discussed the plea agreement with his attorney and that he "understood what it said." The trial court then accepted Smith's guilty pleas and found him guilty of those offenses.

At the sentencing hearing, on September 2, 1998, Smith's counsel acknowledged having reviewed with Smith the pre-sentence investigation report (PSI). Smith's counsel asked that it be noted that Smith was attempting to get counseling at the time of his arrest in August of 1997, and that with one exception, the report's allegations about Smith procuring drugs or alcohol for minors were untrue. Smith's counsel asked that the PSI's attached 22-page

personal statement by Smith—dated September 15, 1998, and describing his personal history—be considered to address certain allegations in the PSI.

Officer Randy Aspenson, of the Columbus Police Department, testified that he investigated the allegations against Smith and had interviewed Smith and his victims. According to Aspenson, who had worked with child molesting cases for seven years, Smith's was one of the two worst such cases he had ever seen because of the number of victims. Aspenson described the sexual acts that Smith performed on young males and how the children were affected. Aspenson stated that in his opinion, Smith was a pedophile. On cross-examination, Smith's attorney elicited Aspenson's agreement that Smith was "not the most intelligent man in the world" and that Smith's memory might be clouded perhaps due to the use of alcohol and drugs. Marcy Trisler, the Bartholomew County Probation Department officer who prepared the PSI, also testified. Trisler described her special training in the area of sexual offenses involving minor victims. According to Trisler, a pedophile is one whose primary sexual interest is children, and she agreed with Asperson that Smith was a pedophile. Trisler further opined that Smith's self perception as a victim made him a higher risk to repeat this sort of crime. On cross-examination, Smith's counsel elicited Trisler's acknowledgment that Smith had reported being molested as a child and her agreement that it was possible that the one victim who reported having been molested in his sleep was actually minimizing his own role by refusing to admit that [he] was participating while awake.

In his argument to the trial court, Smith's counsel suggested that Smith's own molestation as a child was a circumstance worthy of consideration; reminded the court that Smith had admitted his guilt, accepted responsibility, and had been willing to testify against another man involved in multiple acts of child molesting; and noted that Smith had not been able to obtain counseling for his problems. Counsel asked the court to consider Smith's age of 47, his circumstances, his cooperation, and to impose a "sentence that gives him some hope of returning to society." The State asked that the maximum sentence be imposed.

[DE 13-10 at 2-5 (citations to appellate record omitted; footnote moved to text).]

The trial court thereafter sentenced Smith to forty years for each class A felony conviction, and five years for each class C felony conviction, ordering all sentences to be served consecutively. [*Id.* at 6.] The trial court considered as mitigating factors Smith's abusive childhood, his cooperation with police, and his minimal criminal history. [*Id.* at 5.] Nevertheless, the court found these mitigating factors outweighed by several aggravating factors, including the

likelihood that Smith would reoffend, the length of time over which the crimes were committed, the means employed by Smith to commit the crimes (gaining the trust and friendship of his victims through bribery and rewards), and Smith's own statements that he had difficulty resisting the impulse to molest young boys. [*Id.*] Accordingly, the court imposed an aggregate sentence of ninety years. [*Id.* at 6.] Smith appealed, arguing that his sentence was manifestly unreasonable under Indiana law and that he was denied his right of allocution at sentencing in violation of Indiana law. [DE 13-4.] The Indiana Court of Appeals affirmed. [DE 13-5.] Smith did not seek transfer to the Indiana Supreme Court. [*See* DE 13-3.]

On July 14, 2000, Smith filed a petition for post-conviction relief alleging ineffective assistance of counsel. [DE 24 at 83-90.] Specifically, he alleged that his trial counsel had refused to call his character witnesses and refused to allow him to testify on his own behalf at the sentencing hearing. He also alleged that his appellate counsel was ineffective in failing to raise these grounds of ineffective assistance in his direct appeal. [DE 13-10; DE 24 at 83-90.] On August 11, 2000, a public defender entered her appearance on Smith's behalf. [DE 13-10 at 6.] After the state's answer was filed, Smith's counsel withdrew her appearance pursuant to Indiana Rule of Procedure for Post-Conviction Remedies 1(9)(c).[1] Smith thereafter retained private counsel, Robert F. Alden. [DE 13-10 at 6.] After an evidentiary hearing, the court denied Smith's petition. [*Id.* at 9.]

Smith appealed *pro se*, alleging that trial, appellate, and post-conviction counsel had rendered ineffective assistance, and raising various alleged errors by the trial court. [DE 13-8,

---

[1] This rule permits the public defender's office to withdraw if it determines that "the proceeding is not meritorious or in the interests of justice." Ind. R. P. Post-C.R. 1(9)(c).

13-10.] The Indiana Court of Appeals affirmed. [DE 13-10.] Smith sought a transfer to the Indiana Supreme Court, which was denied. [DE 13-7.]

Smith thereafter filed this federal habeas petition raising the following five claims: (1) his trial counsel was ineffective; (2) his appellate counsel was ineffective; (3) his post-conviction counsel was ineffective; (4) errors committed by the trial court denied him due process; and (5) his sentence was manifestly unreasonable. [DE 1.]

## LEGAL STANDARDS

This Petition is governed by the provisions of the Anti-Terrorism and Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court can only grant an application for habeas relief that meets the requirements of 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court
> proceeding.

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is "contrary

to" federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court or if the state court reaches an opposite result in a case involving facts materially indistinguishable from relevant Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively unreasonable." *Id.*

Before considering the merits of a habeas petition, a federal court must ensure that the petitioner has exhausted all available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). The exhaustion requirement is premised on concerns of comity; the state courts must be given the first opportunity to address and correct violations of their prisoner's federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claims in one complete round of state review. *Baldwin v. Reese*, 541 U.S. 27, 30–31 (2004); *Boerckel*, 526 U.S. at 845.

The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a habeas petition when either: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state law procedural ground; or (2) the claim was not presented to the state courts and it is clear those courts would now find the claim procedurally barred under state law. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); *Perruquet*, 390 F.3d at 514. When a habeas petitioner fails to fairly

present his claim to the state courts and the opportunity to raise that claim has now passed, the claim is procedurally defaulted. *Boerckel*, 526 U.S. at 853–54.

A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 2382 (2009). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986).

A habeas petitioner may also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim on the merits would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman*, 501 U.S. at 750. Under this narrow exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A petitioner who asserts actual innocence "must *demonstrate* innocence; the burden is his, not the state's." *Buie v. McAdory*, 341 F.3d 623, 626–27 (7th Cir. 2003) (emphasis in original).

## ANALYSIS

### A. Claim One

In claim one, Smith alleges that his trial counsel, David Nowak, was ineffective. [DE 1 at 5A-5B.] "The Sixth Amendment entitles criminal defendants to the 'effective assistance of counsel'—that is, representation that does not fall below an objective standard of reasonableness

in light of prevailing professional norms." *Bobby v. Hook*, — S. Ct.—, 2009 WL 3712013, at *2

(Nov. 9, 2009). The governing Supreme Court case is *Strickland v. Washington*, 466 U.S. 668

(1984). To establish ineffective assistance of counsel under *Strickland*, the petitioner must show

that counsel's performance was deficient and that the deficient performance prejudiced him. The

court's review of counsel's performance is "highly deferential," and the petitioner "must

overcome the presumption that, under the circumstances, the challenged action might be

considered sound trial strategy." *Davis v. Lambert*, 388 F.3d 1052, 1059 (7th Cir. 2004). The

prejudice prong requires the petitioner to show that "but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Where it is

expedient to do so, a court may resolve an ineffective assistance claim based solely on the

prejudice prong; in other words, where the petitioner cannot establish prejudice, there is no need

to consider in detail whether counsel's performance was constitutionally deficient. *See*

*Strickland*, 466 U.S. at 697; *Watson v. Anglin*, 560 F.3d 687, 689–90 (7th Cir. 2009).

      The Court begins by noting that, although Smith combines numerous alleged errors by

Nowak under claim one, each ground of ineffective assistance is considered a separate claim. *See*

*Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007). Accordingly, the Court will address each

claim individually.

      Smith first claims that Nowak was ineffective when he in misadvised him concerning the

sentencing possibilities that he faced. [DE 1 at 5B.] The Indiana Appellate Court properly

identified the *Strickland* standard as governing the resolution of this claim. [DE 13-10 at 11.]

Accordingly, the court must determine whether the state court's application of *Strickland* was

unreasonable. The Indiana Appellate Court concluded that Smith failed to show he was

misadvised by his attorney about the sentencing possibilities he faced. [*Id.*] The record supports this conclusion. At the post-conviction hearing, Nowak testified that he went over the potential penalties with Smith before he pled guilty, which included a maximum sentence of one hundred sixteen years. He testified that he advised Smith about the potential penalties but was "hopeful" Smith would receive a sentence in the "forty to seventy year range." There is nothing to indicate he misled Smith in any way about the potential penalties he faced. [DE 24 at 253–54.] At the evidentiary hearing, Smith testified that counsel told him "there's a possibility that I could get between thirty and forty [years]." [*Id.* at 267.] Smith acknowledged that Nowak told him the final decision on his sentence was "up to the court." [*Id.* at 269.] The record shows that Smith also signed a written plea agreement which spelled out the potential penalties he was facing. [*Id.* at 166–69.] Furthermore, before the trial court accepted Smith's guilty plea, the court went over this document with him, and Smith acknowledged on the record that he had gone over it with his attorney, understood what it said, and was aware of the sentencing possibilities, which included a maximum sentence of up to one hundred sixteen years. [DE 13-10 at 3; DE 24 at 307–10.] Based on the record, the Indiana Appellate Court's resolution of this claim was not unreasonable.

Smith next claims that counsel was ineffective in failing to retain a psychosexual expert to evaluate him and testify on his behalf. [DE 1 at 5B.] The Indiana Appellate Court denied this claim applying the *Strickland* standard. [DE 13-10 at 12.] At the post-conviction hearing, Nowak testified that he had represented defendants on child molestation charges in the past, and that he was aware of the psychosexual evaluation process, but he decided one would not be helpful in this case. Specifically, he testified that his strategy throughout the proceedings was to try to limit Smith's disclosures because he believed "Larry's own words in my view. . . [were]

his own worst enemy." [DE 24 at 237–41.] He testified that Smith's "attitudes" and explanations about his offenses had the potential to be very damaging, including his view that he was having what amounted to a consensual sexual relationship with the minor victims, and his minimization of his own role in the offenses. [*Id.* at 228–30.] Trial counsel concluded that any benefit from hiring an expert for an evaluation would be offset by the negative impact of the very things Smith would reveal during the evaluation. [*Id.* at 241–43.] He was also concerned that the results of such an evaluation may not be positive for the defense. [*Id.* at 243.] The Indiana Appellate Court determined that counsel's decision not to hire a psychosexual expert constituted sound trial strategy, and based on the record, this determination was not unreasonable. Smith has failed to show either a deficient performance by counsel or a reasonable probability that retaining an expert and further exposing his personal views about his offenses would have led to a more favorable outcome. Accordingly, this claim is denied.

Smith next claims that his counsel was ineffective in failing to object to testimony from the state's witness, Trisler, that he was a pedophile. [DE 1 at 5-C.] The Indiana Appellate Court concluded that Smith had not satisfied the prejudice prong of *Strickland*, because he had not established that such efforts by counsel would have created a reasonable probability of a more favorable result. [DE 13-10 at 12–13.] The record supports this conclusion. Another state's witness, Officer Aspenson, also opined that Smith was a pedophile; thus, an objection to Trisler's testimony, even if sustained, would not have kept out this other testimony. Furthermore, the record demonstrates that at the time of sentencing Smith was 47 years old and admitted that he began molesting boys around age 24, that he molested about "half a dozen boys" after he began this behavior, that he molested one of the victims in this case for approximately 2 years,

and that he had difficulty suppressing his impulses to molest children.[2] [DE 24 at 120–23.] Given the extensive behavior to which Smith admitted, there is nothing to indicate that counsel's objection to Trisler's testimony would have created a reasonable probability of a more favorable sentence. Based on the record, the Indiana Appellate Court's denial of this claim was not unreasonable.

Next, Smith claims that counsel was ineffective in helping him prepare a personal statement to be included with the pre-sentence investigation report. [DE 1 at 5C.] The precise basis for this claim is unclear, but it appears Smith believes his counsel should have helped him write a better personal statement; he claims counsel did not fully explain to him that the statement should be "truly a letter from Smith's heart and soul." [DE 1 at 5C.] The Indiana Appellate Court denied this claim, finding neither deficient performance nor a showing of prejudice. [DE 13-10 at 13.] The record supports this conclusion. Specifically, the record shows that counsel told Smith to write a letter, and that he did so, preparing a personal statement in excess of twenty pages that detailed his difficult upbringing and other problems he had faced in his life, including his own abuse as a child. [DE 13-10 at 13; DE 24 at 129–51.] The trial court considered Smith's difficult upbringing as a mitigating factor at sentencing, but found it was outweighed by other aggravating factors. [DE 13-10 at 5.] Based on the record, the Court finds no basis for concluding that counsel's performance was deficient in this regard or that Smith was prejudiced by any alleged error. The Indiana Appellate Court's resolution of this claim was not unreasonable.

---

[2] He further stated that his behavior could be attributed to his rejection by women, and that with respect to his minor victims "they were willing and didn't object to it." [DE 24 at 125.]

Next, Smith claims that counsel was ineffective in failing to object to hearsay and leading questions at the sentencing hearing. [DE 1 at 5C-5D.] The Indiana Appellate Court rejected this claim on the merits. [DE 13-10 at 14.] A claim of ineffective assistance based on counsel's failure to object to certain evidence is "tied to the admissibility of the underlying evidence." *Hough v. Anderson*, 272 F.3d 878, 898 (7th Cir. 2001). If evidence admitted without objection was admissible under state law, then a defendant's argument fails both prongs of the *Strickland* test. *Id.* Simply put, "failing to object to admissible evidence cannot be a professionally 'unreasonable' action, nor can it prejudice the defendant against whom the evidence was admitted." *Id.* Under Indiana law, the rules of evidence do not apply at sentencing hearings. Ind. R. Evid. 101(c)(2). Thus, there would have been no basis for counsel to object to alleged hearsay or to leading questions at the sentencing hearing, and accordingly, there could be no error and no prejudice to Smith. Based on the record, the Indiana Appellate Court's resolution of this claim was not unreasonable.

Next, Smith claims that counsel was ineffective in failing to cross-examine a witness at the sentencing hearing who testified that Smith had threatened to kill the town marshal's children. [DE 1 at 5D.] The record reflects that Jeff Futz, a liquor store owner who knew Smith, testified that he witnessed an incident in which Smith allegedly became angry at the town marshal and threatened to kill his children. [DE 24 at 375–78.] The incident was unrelated to the charges in this case. [*See id.*] Smith alleges that Futz's testimony "was never put into its proper context, as being merely about Smith's reactions to local children breaking into and pillaging his mobile home." [DE 1 at 5D.] The Indiana Appellate Court denied this claim, because it was not made in Smith's post-conviction petition or developed at the post-conviction hearing. Moreover,

the court found no indication Smith was prejudiced by any alleged error since the trial court did

not rely on Futz's testimony in any way at sentencing. [DE 13-10 at 14.] Given the nature of

Futz's testimony and the fact that Nowak cross-examined other witnesses at the sentencing

hearing, it would be difficult to show that his decision not to draw further attention to this

witness's testimony was anything other than trial strategy. "Where counsel focuses on some

issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons

rather than through sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). Regardless, the

Indiana Appellate Court's resolution of this claim on the prejudice prong was not unreasonable,

given the tangential nature of Futz's testimony, which was unrelated to Smith's offense, and the

lack of any indication that the trial court relied on it in any way at sentencing. Smith has failed to

show either deficient performance or a reasonable probability of a more favorable result if his

counsel had cross-examined Futz and drawn out further details about Smith's threatening

statements. Accordingly, this claim is denied.

Smith next claims that Nowak was ineffective because he failed to seek recusal of the

trial judge. [DE 1 at 5A.] A review of the record reveals that Smith did not raise this claim in one

complete round of state review. As the Indiana Appellate Court pointed out, Smith did not raise

this claim on direct review, nor did he raise it in his post-conviction petition or develop the

factual basis for the claim at the post-conviction hearing, even though Nowak was at the hearing

and testified extensively on other issues. [*See* DE 24 at 83–90, 215-94; DE 13-10 at 12.]

Although Smith did raise certain ineffective assistance claims in his post-conviction petition,

each ground of ineffective assistance is considered separate, and "the failure to alert the state

court to a complaint about one aspect of counsel's assistance will lead to a procedural default."

*Stevens*, 489 F.3d at 894; *see also Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009) (to exhaust an ineffective assistance claim the petitioner must have "identified the specific acts or omissions of counsel that form the basis for her claim of ineffective assistance."). Because Smith did not raise this specific ground of ineffective assistance in one complete round of state review, the claim is procedurally defaulted.

A procedural default may be excused by a showing of cause and prejudice. *Wainwright,* 433 U.S. at 90; *Wrinkles*, 537 F.3d at 812. Although it is not entirely clear, Smith appears to argue that his procedural default should be excused based on ineffective assistance of his appellate and post-conviction attorney. [DE 19 at 3–5.] Attorney error rising to the level of ineffective assistance of counsel can constitute cause to set aside a procedural default. *Coleman*, 501 U.S. at 753-54; *Wrinkles*, 537 F.3d at 812. When a habeas petitioner seeks to excuse a procedural default by claiming ineffective assistance of counsel, the "cause and prejudice" test from *Wainwright* is replaced by the test for ineffective assistance set out in *Strickland*. *See Wrinkles*, 537 F.3d at 812; *see also Murray*, 477 U.S. at 479 ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland*. . . there is no inequity in requiring him to bear the risk of attorney error that results in a procedural default.").

The alleged ineffective assistance of post-conviction counsel cannot establish cause and prejudice to excuse the procedural default because Smith had no Sixth Amendment right to counsel in his post-conviction proceedings. *Coleman*, 501 U.S. at 752; *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Where there is no constitutional right to counsel there can be no deprivation of effective assistance. *Coleman*, 501 U.S. at 752. Because Smith had no

14

constitutional right to counsel in connection with the post-conviction proceeding, any alleged errors by post-conviction counsel cannot establish cause and prejudice sufficient to excuse a procedural default. *See Coleman*, 501 U.S. at 752–53; *Smith v. Battaglia*, 415 F.3d 649, 653 (7th Cir. 2005) (petitioner could not establish cause and prejudice based on errors of post-conviction counsel since he had no right to counsel at that stage).

Smith also argues that his appellate counsel, Karon Perkins, was ineffective in failing to raise this claim on direct appeal, and he did have a Sixth Amendment right at this stage. However, the exhaustion doctrine requires that an ineffective assistance claim be presented to the state court as an independent claim before it may be used to establish cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000); *Murray*, 477 U.S. at 490. If the ineffective assistance claim being used to excuse a procedural default was not itself properly raised in state court, "the petitioner will be fully defaulted."[3] *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002).

Here, a review of the record reveals that Smith did not raise an ineffective assistance claim based on Perkins' failure to raise a claim of ineffective assistance against Nowak on this ground in one complete round of state review. Although Smith raised grounds of ineffective assistance of appellate counsel in his post-conviction petition, he did not raise this specific ground. [*See* DE 24 at 83–90.] Nor did he develop the factual basis for the claim in the post-conviction hearing. [*See* DE 24 at 215–94.] Because Smith did not properly exhaust this claim in state court, it too is procedurally defaulted. Smith has not raised any grounds that would excuse

---

[3] The Seventh Circuit has observed that this requirement, whereby an ineffective assistance claim used as cause to excuse a procedural default must itself have been exhausted, can result in a "tangled web of defaults excused by causes that may themselves be defaulted and require a showing of cause and prejudice—a result that has an attractive power for those who like difficult puzzles." *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003).

this second level of default, and therefore, the claim is fully defaulted.

A procedural default also may be excused where the petitioner can establish a miscarriage of justice, by showing that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup*, 513 U.S. at 324. "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Here, Smith does not assert that he can meet this exacting standard, nor does it appear that he can given that he admitted the factual basis for the charges when he pled guilty. *See Buie*, 341 F.3d at 626 ("[I]t is hard to see how one who has confessed can assert actual innocence."). In summary, because this claim is procedurally defaulted, the Court does not reach this claim on the merits.

For all of these reasons, Smith has failed to show that he is entitled to habeas relief on claim one.

## B. Claim Two

In claim two, Smith alleges that Perkins was ineffective in failing to raise various claims of ineffective assistance of trial counsel on direct appeal. [DE 1 at 5D-5E.] An ineffective assistance of appellate counsel argument is also subject to the *Strickland* analysis. *Howard v. Gramley*, 225 F.3d 784, 789–90 (7th Cir. 2000). The petitioner must show that appellate counsel's performance was "unreasonably deficient" and that this inadequacy resulted in prejudice. *Id*. at 790. On the deficiency prong, the petitioner must show that counsel failed to present a significant and obvious issue on appeal; counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood

of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Where appellate counsel has presented some arguments on appeal but not others, it will be difficult to demonstrate that counsel was incompetent. *Id*. On the prejudice prong, the petitioner must show "there is a reasonable probability that his case would have been remanded for a new trial or that the decision of the state trial court would have been otherwise modified on appeal," if the claim had been presented to the appellate court. *Howard*, 225 F.3d at 789–90.

As for the claims that Smith exhausted in state court, the Indiana Appellate Court determined that Smith was not prejudiced by any alleged errors committed by his trial attorney, and that Smith's appellate counsel could not have been ineffective in failing to raise these arguments on appeal. [DE 13-10 at 15.] Based on the record, and the above discussion of Smith's ineffective assistance of trial counsel claims, the Indiana Appellate Court's resolution of Smith's ineffective assistance of appellate counsel claim was not unreasonable. *See Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003) (petitioner must show reasonable probability that issue not raised would have altered the outcome of the appeal).

As for the other grounds of alleged ineffective assistance, including that Perkins was ineffective in failing to raise a claim based on Nowak's failure to move for recusal of the trial judge and that she was "preoccupied" by "criminal conduct that adversely effected her representation," these claims were not raised in one complete round of state review. [DE 1 at 5D.] Smith did not raise these claims in any of the post-conviction proceedings (in which he raised other grounds of ineffective assistance of appellate counsel) nor was the factual basis for this claim developed at the post-conviction evidentiary hearing. [DE 24 at 83–90, 215–94.] Accordingly, this claim is procedurally defaulted. To the extent Smith is arguing that his

procedural default should be excused because of the alleged failings of post-conviction counsel, that argument fails since, as discussed above, he had no Sixth Amendment right to counsel in the post-conviction proceedings.

## C. Claim Three

In claim three, Smith asserts that he received ineffective assistance from his post-conviction attorney because his attorney was not prepared for the evidentiary hearing. [DE 1 at 5E.] Even assuming Smith could establish the factual basis for this claim, Smith had no right to counsel during the state post-conviction proceedings. *Finley*, 481 U.S. at 555; *Wainwright*, 455 U.S. at 587. Therefore, he cannot claim ineffective assistance of counsel under the Sixth Amendment based on counsel's alleged deficient performance. *Coleman*, 501 U.S. 752; *Anderson v. Cowan*, 227 F.3d 893, 901 (7th Cir. 2000). Accordingly, claim three is denied.

## D. Claim Four

In claim four, Smith asserts that "[t]he trial and post-conviction court and judge engaged in improper and highly prejudicial acts and omissions."[4] [DE 1 at 5G.] First, he argues that the judge improperly denied his request for a continuance during the post-conviction hearing. [*Id.*] Whether to grant a continuance is a matter of case management committed to the court's discretion under Indiana law. *See Tapia v. State*, 753 N.E.2d 581, 586 (Ind. 2001). Although "in some circumstances" the denial of a motion for continuance could implicate due process, the

---

[4] The same judge, Chris D. Monroe, presided over the guilty plea and sentencing and the post-conviction proceedings. [*See* DE 24 at 215, 327.]

Seventh Circuit had observed that it is "hard to imagine circumstances in which a scheduling decision unrelated to the right to a speedy trial would deny the defendant due process of law." *Drake v. Clark*, 14 F.3d 351, 358–59 (7th Cir. 1994). Indeed, the Seventh Circuit recognized, "It trivializes the Constitution and the function of federal habeas corpus to argue that the minutiae of trial scheduling furnish grounds for federal intervention in the state criminal process." *Id.* at 359. In this case, there is no Speedy Trial claim, and the ruling Smith complains of occurred in a post-conviction proceeding that he himself initiated. Thus, Smith's claim does not implicate federal due process.

Assuming Smith has raised a cognizable due process claim, the Indiana Appellate Court's rejection of the claim was not unreasonable. The record shows that the day before the scheduled post-conviction hearing to be held on June 18, 2003, Smith retained new counsel, Alden, who filed a motion for a continuance. [DE 24 at 53.] This request was granted, and the hearing was rescheduled for nearly ten months later on March 10, 2004. [*Id.* at 52.] On the day of the rescheduled hearing, counsel moved for another continuance stating that he had not been paid. [*Id.* at 48–49.] The court questioned counsel about his request on the record at the time of the scheduled hearing. [DE 24 at 219–20.] By that time, counsel had been paid; he stated that he was prepared to go forward with the evidence but would need additional time to research a waiver issue raised by the state shortly before the hearing.[5] [*Id.* at 221.] The court noted that several witnesses had been subpoenaed and were prepared to testify, and denied the continuance request, but granted Smith's counsel 30 days to respond in writing to the state's waiver argument. [*Id.* at

---

[5] The state argued that Smith's ineffective assistance claims were waived because they were not raised on direct appeal. [DE 24 at 50.] As Smith's counsel pointed out in a subsequent filing, a claim of ineffective assistance need not be raised on direct appeal to be preserved for post-conviction review under Indiana law. [*See* DE 24 at 45-46 (citing *Landis v. State*, 749 N.E.2d 1130 (Ind. 2001).]

221–22.] Ultimately, the court resolved the waiver issue in Smith's favor, ruling on the merits of his ineffective assistance claims. [DE 24 at 39–41.] On this record, Smith has failed to show that the court's refusal to grant him another continuance denied him due process. Therefore, the Indiana Appellate Court's rejection of this claim was not unreasonable.

Next, Smith claims that the court failed to adequately accommodate his hearing impairment at the post-conviction hearing. [DE 1 at 5G.] He suggests that the court violated his due process rights to "special services." [*Id.*] The Supreme Court has not recognized a constitutional right to a court-appointed interpreter; however, a defendant may be denied due process when he cannot comprehend the proceedings against him. *See United States v. Johnson*, 248 F.3d 655, 663 (7th Cir. 2001); *United States v. Cirrincione*, 780 F.2d 620, 634 (7th Cir. 1985).

Here, the record does not bear out Smith's contention that he could not comprehend the post-conviction proceedings because of a hearing impairment. Although Smith testified at the outset of the hearing that he had a hearing impairment, when his counsel asked him, "Can you hear what I am saying right now?" Smith answered, "Yes, sir." [DE 24 at 260.] Thereafter, Smith asked counsel to repeat a few questions, and with the court's permission, the parties repositioned themselves and the microphones. [*Id.* at 261.] Smith's counsel then asked him, "Can you hear me okay now?" and Smith replied, "Yes, sir." [*Id.*] He then went on to respond to extensive questioning from his attorney and from the prosecutor without any apparent difficult. [*See id.* at 262–90.] Further, Smith's trial counsel testified at the hearing that he had known Smith for several years, having represented him in a prior matter, and never had any difficult communicating with him. [DE 24 at 257.] The Indiana Appellate Court found no violation of

Smith's due process rights, and based on the record, this determination was not unreasonable. [*See* DE 13-10 at 19.]

Smith next claims that his due process rights were violated because the trial judge failed to recuse himself based on a conflict of interest. [DE 1 at 5G.] The Indiana Appellate Court pointed out that Smith never sought recusal of the judge, did not raise this claim on direct appeal, and did not raise the claim in his post-conviction petition or develop the factual basis for the claim at the post-conviction evidentiary hearing.[6] [*See* DE 13-10 at 19.] Accordingly, the Indiana Appellate Court found that the claim had been waived. [*Id.*] A federal habeas court will not review a question of federal law if the state decision rested on an adequate and independent state ground for dismissal, including a state procedural rule. *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009). A finding of waiver by the state court is considered an adequate and independent state ground. *Id*. Therefore, this claim therefore cannot be considered on the merits.

The claim may nevertheless be considered if Smith can establish cause and prejudice, or if he can establish that failure to consider the claim will result in a fundamental miscarriage of justice. *See Davis*, 388 F.3d at 1058. As noted above, any alleged error by post-conviction counsel cannot establish cause, and Smith did not properly exhaust a claim that appellate counsel was ineffective in failing to raise this claim on direct appeal. Because Smith has not asserted grounds to excuse this second level of default, the claim is fully defaulted. Smith also has not established that he meets the stringent requirements of the miscarriage of justice exception.

For all these reasons, Smith has failed to establish that he is entitled to habeas relief on

---

[6] Smith makes the unusual claim that during some unspecified time period, he participated in a religious study class at the jail led by Judge Monroe. [DE 1 at 5G.] Given Smith's failure to develop this claim in state court, it cannot be discerned from the record whether Smith actually participated in such a class and if so, when.

claim four.

**E. Claim Five**

Finally, in claim five, Smith alleges that his sentence was unreasonable and excessive. [DE 1 at 5H.] In support of this claim, he references the brief filed by counsel in his direct appeal to the Indiana Appellate Court. [*Id.*] In that appeal, Smith argued that he was denied his right of allocution under Indiana law and that his sentence was manifestly unreasonable under Indiana law. [*See* DE 13-4, DE 13-5.] In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Errors in state law are beyond the scope of federal habeas review. *Id.*; *see also Lechner v. Frank*, 341 F.3d 635, 642 (7th Cir. 2003) ("Federal habeas corpus relief does not lie for errors of state law."). Because claim five is based on state law, it is not cognizable in this proceeding.

Smith argues that the claim is cognizable under the Seventh Circuit's decision in *Perruquet v. Briley* even though it is based on state law. [DE 19 at 8.] In that case, the Seventh Circuit recognized that a claim challenging errors in state evidentiary rulings may be cognizable in a habeas proceeding if the errors were so serious that they rose to the level of depriving the defendant of a fundamentally fair trial. *Perruquet*, 390 F.3d 505, 510–11 (7th Cir. 2004). In this case, Smith pleaded guilty and there was no trial. Additionally, the challenges he is attempting to raise to his sentence in no way implicate state evidentiary rulings. Accordingly, *Perruquet* is inapplicable. For these reasons, claim five does not provide a basis for granting habeas relief.

**CONCLUSION**

For the foregoing reasons, the petition for writ of habeas corpus [DE 1] is **DENIED.**

SO ORDERED on November 20, 2009.

      s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION